IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

In re:                                    Civil No. 09-1258-AA
James P. McGee,                           OPINION AND ORDER

      Plaintiff,

  vs.

GREGORY FUNDING, LLC, an
Oregon limited liability
company, and RANDAL
SUTHERLIN,

      Defendants.
_____

Tami F. Bishop
M. Caroline Cantrell
M. Caroline Cantrell & Assoc. PC
1500 NE Irving St. #100
Portland, Oregon 97232
    Attorneys for Debtor/Plaintiff

Kathryn P. Salyer
Farleigh Wada Witt
121 SW Morrison Street, Suite 600
Portland, Oregon 97204-3136
    Attorney for Defendants

AIKEN, Chief Judge:


Page 1 - OPINION AND ORDER

Plaintiff filed a motion for temporary restraining order/preliminary injunction ("TRO/PI"). The court granted plaintiff's motion for a TRO on November 10, 2010, prohibiting defendants from executing its proposed sale of plaintiff's property on the Multnomah County Courthouse steps scheduled November 10, 2010 at 10:00 a.m. On November 23, 2010, the date scheduled to hear plaintiff's motion for a preliminary injunction, the parties elected to forego oral argument and submit the matter to the court on the briefs. Plaintiff's motion for a preliminary injunction is granted.

## BACKGROUND

Plaintiff brings this action for injunctive relief, actual damages, statutory damages, attorney fees and costs against defendants for violation of the Truth in Lending Act, 15 U.S.C. sections 1601 et seq. and 1640(a) ("TILA"), among others.

Plaintiff, an African-American male, alleges this is a "residential predatory lending case" arising from a "fraudulent" home mortgage refinance transaction originated by defendant Gregory Funding, LLC with defendant Randal Sutherlin as the loan interviewer. Defendants originated a series of three loan transactions with plaintiff signed on September 12, 2005, September 26, 2006, and December 19, 2007. Plaintiff alleges those loans "stripped plaintiff of his home equity and put him at risk of losing his home." Plaintiff alleges that he failed to

Page 2 - OPINION AND ORDER

receive accurate, material disclosures required by TILA and the Home Ownership and Equity Protection Act of 1994 ("HOEPA") at the closing of both his second and third loans. As a result, plaintiff exercised his right to rescind the 2006 and 2007 loans under TILA, and filed the action at bar to enforce those rights.

Plaintiff filed for bankruptcy protection in the District of Oregon on September 22, 2008, which was confirmed on April 16, 2008. The Bankruptcy Court ordered relief from the automatic stay on September 2, 2009.

In September 2005, plaintiff contacted defendant Gregory Funding, LLC ("Gregory") to request information regarding refinancing his home. At that time there was a pending foreclosure sale on plaintiff's home. Plaintiff had recently started a new job. Defendant Sutherlin visited plaintiff's home to discuss refinancing and spent about fifteen minutes with plaintiff. Later that day, Sutherlin phoned plaintiff to inform him that the loan was approved and the closing would take place within a couple of weeks. Plaintiff was not asked to provide tax returns, pay stubs, or complete a credit application at any point during the refinance. There is no record of a real estate appraisal completed at any point to determine the value of plaintiff's home. On September 12, 2005, plaintiff signed the closing documents and refinanced his home for $174,900 at 7.54% interest with a one-year balloon payment of $175,999.66. A fixed

rate balloon note was signed setting forth 12 principal and interest payments of $1,100 with the first payment due November 1, 2005, and a late payment fee of $55. Defendant Gregory received $9,800 as a loan origination fee from the transaction. Plaintiff signed an option to extend the loan for a fee of $6,980. The loan maturity date was October 1, 2006.

The material disclosures required by HOEPA for a high cost loan were not provided to plaintiff prior to or at the closing. Plaintiff did not sign and receive his two copies of his right to cancel under TILA and the balloon rider to the deed of trust was unsigned at closing.

In August 2006, plaintiff began shopping for a conventional loan; however, due to defendant Gregory not reporting the payment history on plaintiff's loan, he was unable to qualify for a refinance with another lender. Plaintiff therefore entered into a second loan transaction with defendants on September 21, 2006. Plaintiff signed a document titled First Amendment to Promissory Note at defendants' office on September 21, 2006. The transaction was for $184,400 at 7.54% interest with a one-year balloon payment of $185,559.72. The first amendment set forth 12 principal and interest payments of $1,159.72 and a late payment fee of $57.99 with the first payment due November 1, 2006. Defendant Gregory received $9,500 as a loan fee from the transaction. The loan maturity date was October 1, 2007. Again,

the material disclosures required by HOEPA for a high cost loan were not provided to plaintiff prior to or at the closing including the HUD H-8 form (explaining a limited right to cancel for same lender refinancing).

Plaintiff made the November and December 2006 and January 2007, payments and did not make another payment until November 2007. He made a payment of $2,500 on November 15, 2007, and another payment of $3,500 on November 29, 2007. On December 1, 2007, plaintiff was an estimated $6,177.26 in arrears. In early December 2007, plaintiff discussed his refinancing options with defendant Sutherlin. On December 19, 2007, plaintiff believed he was entering into a 30-year principle and interest conventional mortgage when he entered into the third loan transaction with defendants.

Plaintiff alleges that Sutherlin failed to inform him that the loan was an interest only loan with a balloon payment due in 30 years of an amount higher than the original loan amount. Plaintiff was not asked to provide proof of his income or ability to repay the loan prior to signing the second amendment. This transaction was for $216,216 at 7.54% interest with a loan maturity date of December 31, 2007 under the second amendment to the note. According to the second amendment, Gregory advanced an additional $21,406.46 to borrower as 1) property insurance ($450); 2) property taxes (46,223.23); 3) lender attorney fees

Page 5 - OPINION AND ORDER

($360); 4) one-day interest ($52.55); and 5) extension and modification fee ($14,320.68).  The first amendment was $14,400 plus $21,406.46 in lender advances under the second amendment for a total of $205,806.46.  The second amendment is for an explained difference of $10,409.54.  Plaintiff was not provided a good faith estimate prior to closing or a HUD statement at closing detailing the loan fees and costs paid to defendant.  The additional loan fee under the second amendment was $16,216.  Gregory advanced all but $1,895.32 of the fee.  Plaintiff paid the balance at closing of the second transaction.

Again, defendants failed to provide any material disclosures required by HOEPA for a high cost loan including the HUD H-8 form.  The limited right to cancel provided on the H-8 form for same lender refinancing was not provided to plaintiff when he signed the first amendment to the promissory note.  Plaintiff did not make any payments under the second amendment to the note.  Defendant charged plaintiff $30,906.46 in fees for the 2006 and 2008 loans and an additional $9,840 for the original loan in 2005, for a total of $40,746.46 in fees for the three transactions.  Plaintiff alleges these fees are excessive and unreasonable.  Further, plaintiff alleges that defendants' actions in refinancing plaintiff's loan three times within a two year period without regard to the best interest of plaintiff establishes an egregious pattern or practice of making loans in

violation of 12 C.F.R. section 226.32.

Gregory set a foreclosure sale date for September 23, 2008, in the interior foyer of the Multnomah County Courthouse. Plaintiff filed for bankruptcy protection under Chapter 13 on September 22, 2008.

The sale of plaintiff's home was held on October 27, 2009, with defendant as the sole bidder. Defendant now moves to execute its proposed sale of plaintiff's home.

## STANDARDS

The party seeking a preliminary injunction must demonstrate that he is (1) likely to succeed on the merits; (2) likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008).

"Under either formulation, the moving party must demonstrate a significant threat of irreparable injury ...." Id. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." Caribbean Marine Services Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original). "Speculative injury does not constitute irreparable injury." Goldie's Book Store v. Super. Ct. of State of Cal., 739 F.2d 466,

Page 7 - OPINION AND ORDER

472 (9th Cir. 1984). If the party seeking the injunction cannot demonstrate irreparable injury, then the district court need not address the merits and may deny the motion for an injunction. Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374, 1376 (9th Cir. 1985).

## DISCUSSION

Defendants assert that plaintiff is not entitled to enjoin the foreclosure sale because (1) the issue is moot because the foreclosure sale was completed by delivery and recording of a Trustee's Deed, prior to this court's entry of the TRO on November 10, 2009; and (2) plaintiff's preliminary injunction claim fails on the merits because plaintiff's rescission claim is time barred.

### Moot, Not Likely to Succeed on Merits and No Irreparable Harm

Defendants argue plaintiff's claim for injunction is moot. The property at issue was sold at a foreclosure sale on October 27, 2009, and a Trustee's Deed was recorded on November 6, 2009. This court entered a TRO on November 10, 2009. Justiciability requires the existence of an actual case or controversy. Plaintiff must meet the "case or controversy" requirements at all stages of the litigation and "not merely at the time" the lawsuit is instituted. Roe v. Wade, 410 U.S. 113, 125 (1973). A case becomes moot "if, at some time after the institution of the action, the parties no longer have a legally cognizable stake in

Page 8 - OPINION AND ORDER

the outcome." Goodwin v. C.N.J., Inc., 436 F.3d 44, 49 (1st Cir. 2006).

Defendants also argue that plaintiff is not likely to succeed on the merits. Plaintiff agrees that the only claim supporting his motion for injunction is the rescission claim under TILA. Pursuant to 15 U.S.C. section 1635(f), "an obligor's right of rescission . . . expires three years after the date of consummation of the transaction, . . . notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor." Section 1635(f) represents an absolute limitation on rescission actions which bars any claim filed more than three years after consummation of the transaction. Miguel v. Country Funding Corp., 309 F.3d 1161 (9th Cir. 2002). This remains true regardless of a foreclosure. 15 U.S.C. section 1635(I); Beach v. Ocwen Federal Bank, 523 U.S. 410, 417-18 (1998).

The loan to plaintiff occurred on September 12, 2005. Defendants argue that any right to rescind that loan, including the trust deed given to secure it, timed out as of September 11, 2008.

Finally, defendants argue that there is no irreparable harm to plaintiff. Defendants assert that plaintiff will not suffer irreparable harm and instead will suffer only monetary injury.

Page 9 - OPINION AND ORDER

Monetary injury is not normally considered irreparable. <u>LA Mem'l Coliseum Comm'n v. NFL</u>, 634 F.2d 1197, 1202 (9th Cir. 1980). Defendants assert that the foreclosure is complete, therefore, the only possible remedy remaining is monetary damages.

I disagree and grant plaintiff's motion for preliminary injunction. There is no dispute that the right of rescission on subsequent transactions applies only to the extent that the lender advances new funds to the obligor. 12 C.F.R. 226.23(f)(2). That section provides as follows:

> (f) Exempt Transactions. The right to rescind does not apply to the following:
>
> (2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.

Therefore, for purposes of rescission, a new advance does not include amounts solely attributed to the cost of refinancing, including finance charges on the new transaction such as an extension fee.

Defendants argue that the only additional "credit" advanced in the first extension was for the extension fee, which is a finance charge and not part of the "amount financed" for purposes of Regulation Z.

Page 10 - OPINION AND ORDER


Similarly, defendants argue that the Second Amendment also did not include any advances which gave rise to the right of rescission. In the second extension, $6,673.23 was advanced to pay insurance premiums and property taxes both due. Defendants assert that these amounts are considered advances to protect the collateral, and could have been made by defendants under the existing trust deed without further action by plaintiff. Therefore, defendants assert, these amounts would also be considered part of the "costs" of refinancing. Further, the second extension included advances for $360 in attorney's fees, $52.55 in prepaid interest, and $14,320.68 toward the extension fee. Defendants assert that all of these amounts are finance charges for the purposes of Regulation Z, and therefore, excluded from the amount financed in determining whether "new funds" have been advanced for rescission purposes.

Section 1635(e)(2), however, provides an express exemption for a "refinancing or consolidation (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an existing extension of credit by the same creditor secured by an interest in the same property." 12 C.F.R. section 226.23(f). The regulation states that the right to rescind applies "to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amount attributed solely to the costs of

refinancing or consolidation."  Here, plaintiff's refinancing of his original loan (second transaction) with defendant was exempt from rescission, except "to the extent the new amount financed exceeded the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of refinancing or consolidation."  The second transaction signed on September 21, 2006, was for $184,400 and included $9,500 as an additional amount paid to defendants.  The amount financed, $184,400, exceeded the balance of the first loan ($174,900); therefore, plaintiff had a right to rescind the second transaction (the First Amendment to the Promissory Note). Similarly, the third transaction also falls under the exemption as it was for the amount of $216,216 with finance charges of $17,078.81.  The amount financed, $216,216 exceeded the balance of the second transaction ($184,400), and therefore plaintiff had a right to rescind the third transaction.

    While true that section 1635(e)(2) limits a rescission of a refinance with no new advances, the Board's regulation clearly states that new amounts financed that exceed the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of refinancing or consolidation are rescindable under the TILA. The Board's construction of section 1635(d)(2) is entitled to deference. <u>See Household Credit Services, Inc. v. Pfennig</u>, 541 U.S. 232

Page 12 - OPINION AND ORDER

(2004)(recognizing the Board and its staff are designed by Congress as the primary source of interpretation of truth-in-lending law). Therefore, pursuant to section 12 C.F.R. 226.23(f)(2), the refinancing exemption applies to the additional amounts financed and renders both the second and third transactions subject to rescission under 15 U.S.C. section 1635.

Moreover, Official Staff Comment 4 to 12 C.F.R. section 226.23(f), holds that for purposes of the right of rescission, generally "a new advance does not include amounts attributed solely to the costs of refinancing[,]" however, those fees allocated to the borrower must be "bona fide and reasonable in nature." Plaintiff paid lender fees in the amount of 5.63% of the loan amount in his first transaction with defendants. In his second transaction, he paid 5.15% of the loan amount in lender fees; and finally, in his third transaction, plaintiff paid 7.9% of the loan amount in lender fees. Plaintiff was charged a total of $36,418.81 in loan origination fees for three transactions. In a little over four years, from September 12, 2005, to October 27, 2009, plaintiff's debt to defendants increased from $174,900 to $253,945.92, or $79,045.92. Given that the Federal Housing Administration ("FHA") recently announced a limitation on loan origination fees charged to a borrower as no more than 1% of the loan, plaintiff's loan fees of 5% and 7%, even considering the increased risk associated with a sub-prime loan, seems

Page 13 - OPINION AND ORDER

"unreasonable," and runs counter to section 226.23(f)'s comment that borrower fees must be "bona fide and reasonable."

Finally, due to the lack of disclosures including a Good Faith Estimate of costs, it is difficult to discern whether the fees paid by plaintiff were bona fide and reasonable real estate related fees that are nonrescindable as a new advance, or a finance charge that is rescindable under 15 U.S.C. section 1635; 12 C.F.R. section 226.23(f)(2). Given these circumstances, the court will construe the statute in the light most favorable to plaintiff, deeming the fees unreasonable finance charges, and therefore allowing plaintiff to rescind the second and third loan transactions.

The Home Ownership and Equity Protection Act, ("HOEPA"), an amendment to TILA, created a special class of regulated closed end loans made at high annual percentage rates or with excessive costs and fees. HOEPA prohibits balloon payments and early financing unless it is in the best interests of the borrower. The lender is required to verify the borrower's ability to repay the loan before extending credit. 15 U.S.C. section 1639. Mandatory compliance for creditors began on October 1, 2002, and if creditors fail to comply with the HOEPA required disclosures and prohibitions, the consequence is rescission under section 1635. HOEPA rescission does not have a statute of limitations subject to tolling, but a statute of repose that creates a

Page 14 - OPINION AND ORDER

substantive right not subject to tolling.  TILA section 130(e).

Further, home equity loans that exceed either an APR trigger of 8% or a points and fees trigger of 8% are subject to additional consumer protections, including: three day advance disclosures regarding the high cost of the loan; and prohibitions on abusive loan terms and creditor practices.  As calculated by plaintiff, the September 12, 2005, transaction has an APR rate spread of 9.06% and a 6.45% points and fees.  The second transaction from September 21, 2006, has an APR rate spread of 8.021% and 5.43% points and fees.  The final transaction from December 19, 2009 has an APR rate spread of 4.475% and 8.12% points and fees.  All three transactions fall under HOEPA as high rate loans that required additional disclosures to plaintiff not less than three business days before closing the loan.  Plaintiff maintains the required disclosures were never provided to him by defendants.

Besides regulating the cost of a home loan, HOEPA prohibits balloon payments, early refinancing also knows as "loan flipping," and making unaffordable loans without verifying the borrower's ability to repay the loan.  All three transactions at issue here contained balloon payments in violation of HOEPA.  The first two transactions contained a term of five years or less along with a balloon payment.

HOEPA and TILA provide the authority for this court to allow

Page 15 - OPINION AND ORDER

plaintiff to rescind both the second and third transactions with defendant. Pursuant to King v. State of California, 784 F.2d 910, 915 (9th Cir. 1986), cert. denied, 484 U.S. 802 (1987), this court also has authority to allow plaintiff to rescind the first transaction under the doctrine of equitable tolling. King held, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action[.]" Pursuant to the Ninth Circuit's ruling in King, supra, it is permissible for district courts to evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act. I find those circumstances exist here and therefore adjust the Limitations period accordingly to allow plaintiff to rescind the first transaction.

    Finally, defendants argue that regardless of plaintiff's ability to rescind the transactions, plaintiff is still not likely to succeed on the merits of his recession claim because plaintiff is unable to repay the loan proceeds. Plaintiff's loan has been in default status for several years. He obtained protection of the bankruptcy court and then defaulted on the Loan post-petition, thus causing the bankruptcy court to order relief from the stay. The burden of proof that plaintiff can repay the

Page 16 - OPINION AND ORDER

loan proceeds rests with plaintiff, without such a showing, plaintiff cannot prove that he is likely to succeed on the merits.  See Yamamoto v. Bank of New York, 329 F.3d 1167, 1172 (9th Cir. 2003)(when lender contests notice of rescission, the security interest is not extinguished upon giving the notice and instead occurs only when the court so orders, and upon terms the court deems just, including conditioning rescission on the repayment of the loan proceeds).

Plaintiff represents to this court that he intends to modify his current bankruptcy plan to make monthly adequate protection payments toward tender through his Chapter 13 plan in a manner similar to making payments on secured personal property under 11 U.S.C. section 1326.  The tender, including the interest rate of 7.547%, would be amortized over 30 years.  Defendant would file an amended proof of claim using the tender amounts as the secured debt.  Brian Lynch, the Chapter 13 trustee, is agreeable to working with plaintiff in putting together a proposal to pay the tender requirement.  A comparative market analysis of the property estimates the property's current value ranging from $200,000 to $225,000 considering the economy, sales, and market trends.  Plaintiff is currently residing in his home with his children.  He intends to make a monthly payment through his chapter 13 bankruptcy plan as adequate protection to defendants. Plaintiff has current homeowner's insurance and he will be

responsible for maintaining the property taxes with the county. Further, I find that plaintiff will suffer irreparable harm if he and his children are rendered homeless by the sale of his home. I find that plaintiff is likely to succeed on the merits, he is likely to suffer irreparable harm in the absence of the injunction; the balance of equities tip in his favor; and an injunction is in the public interest.

## CONCLUSION

Plaintiff's motion for a preliminary injunction (doc. 5) is granted. Defendants' motion to strike plaintiff's exhibits (doc. 27) is denied.

IT IS SO ORDERED.

Dated this  20   day of February 2010

                              /s/ Ann Aiken                
                             Ann Aiken
                    United States District Judge

Page 18 - OPINION AND ORDER